EXHIBIT 1 –

PETITION (STATE COURT)



# IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| DAVID DORMONT, ) | DISTRICT COURT **FILED** |
| Plaintiff, ) | Case No.  MAY - 1 2017 |
| vs. ) | Attorney Lien Claimed  DON NEWBERRY, Court Clerk STATE OF OKLA. TULSA COUNTY |
| Heurtey PetroChem, ) Petro-Chem Development Co., Inc. ) | **CJ-2017-01676** |
| Defendants. ) | Caroline Wall |

### PETITION

COMES NOW the Plaintiff, David Dormont, pro se, and brings this action against the Defendant, Heurtey PetroChem and Petro-Chem Development Co. Inc., for violations of Plaintiff's constitutionally protected rights arising out of his employment and termination by said Defendant. In support of his Petition, Plaintiff states as follows:

### PARTIES, JURISDICTION & VENUE

1. This is an action for damages and to secure protection of and to redress deprivation of rights secured by the Age Discrimination in Employment Act of 1967 as amended, 29 U.S.C. 621 *et seq.* (hereinafter "ADEA").

2. Plaintiff, David Dormont, is a resident of the State of Oklahoma, and filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff complained to the EEOC of discrimination based on his age.

3. Plaintiff received a Notice of Right to Sue on February 3, 2017, and this Petition has been filed within ninety (90) days of the receipt of the Notice of Right to Sue.

1

4. As such, Plaintiff has exhausted his available administrative remedies and has complied fully with all prerequisites in this Court under the ADEA and the OADA.

5. Actual and Compensatory damages are sought pursuant to 42 U.S.C. § 2000e-5(g) and 25 O.S. § 1301 et seq.

6. Liquidated damages are sought pursuant to 29 U.S.C. § 2601 et seq and the OADA.

7. Punitive damages are sought pursuant to 25 O.S. § 1301 et seq.

8. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 2000e 5(g), 29 U.S.C. § 2601 et seq, and 25 O.S. § 1301 et seq.

9. Plaintiff is a resident of Tulsa County, State of Oklahoma.

10. Defendant, Heurtey PetroChem is a foreign corporation and Petro-Chem Development Co. Inc., is owned by Heurtey and operates business in Tulsa County and regularly employs more than fifteen (15) employees.

11. The incidents and occurrences giving rise to Plaintiff's claims occurred in Tulsa County, State of Oklahoma.

12. Therefore, jurisdiction and venue properly lie in this Court.

### FACTS COMMON TO PLAINTIFF'S CLAIMS

13. Plaintiff incorporates the preceding paragraphs as if re-alleged.

14. The Plaintiff is fifty-six (56) years of age at the time of his termination from employment with defendant.

15. Plaintiff began his employment with Defendant on November 13, 2013 as a Project Expeditor.

16. The Plaintiff worked for the Defendant for over two (2) years with no issues regarding his performance and always met expectations in performing his job duties.

17. The Plaintiff interviewed with the Defendant (Senior Director of Procurement) Jody Dungan on Wed, October 30th 2013, who had traveled from the Corporate Headquarters in Houston. During the interview, he stated he would like to make the Plaintiff the offer of employment and after some negotiations, Plaintiff accepted the offer. In negotiating the starting wages for the Plaintiff, Mr. Dungan stated "that the best he could do would be about $57,000 or a little higher" to start. He also stated "it was in line with the 2 other Expediters already working in the Tulsa office and he couldn't go much higher than that." Since the Plaintiff had many years of experience as a Buyer, he discussed the possibility of becoming a Buyer at Petro-Chem in the future. Mr. Dungan stated he would hope that after a year or two that the Plaintiff would be given the opportunity to move into a buyer position, which he said, would pay much more.

18. In August of 2014, nine months after the Plaintiff stated at Petro-chem, one of the other Expediters was promoted to a Project Managers position. Subsequently the company decided to hire another Expediter. The new Expediter was a 30-year-old young man. The Plaintiff was not his main trainer, but did assist in his training, helping him with anything and explaining how to accomplish the job.

19. The new Expediter did not have any experience as an expediter, or in purchasing, and only had a 2-year associate's degree.

20. Soon after the new Expediter come on board in Tulsa, the other more experienced Expediter from Tulsa moved down to the Houston office. Also recently hired in Houston was a younger Expediter that was in his mid 20s, and was the son of one of the Vice

3

Presidents of the company. He had no expediter experience. There were now 2 expediters in Houston and 2 expediters in Tulsa. The Plaintiff was the most experienced expediter in Tulsa.

21. The plaintiff had his first yearly review in November of 2014. Mr. Dungan came up from the Houston office to do the review. The Plaintiff received a mixed review in that he was the expediter for 3 different Project Managers. The Plaintiff received good feedback from the Project Manager that he worked with in the Tulsa office, while the other 2 Project managers that were located in Houston, and who the Plaintiff had never met, gave him a less than perfect reviews. Mr. Dungan said he did not understand why the difference in reviews and wasn't sure what to do about it. The plaintiff explained that communication was difficult with the Project Managers in Houston and that they were often out of the office and in the field, making it hard to get ahold of often. They did not use the Excel Spreadsheet that the Plaintiff kept updated with all the Expediting information for all to see, and depended on the Plaintiff to inform them. (After getting this info from Mr. Dungan, the Plaintiff decided to schedule weekly phone calls to both of the Project Managers to go over all expectations for the upcoming week and this improved the relationships with the Project Managers and they agreed that the Plaintiff was doing a better job for them). Mr. Dungan decided that the Plaintiff would not be given a yearly raise at this point and that He would give the Plaintiff 90 days to show improvement. After the 90 days, if the Plaintiff showed improvement he would receive the raise retro-actively, along with any bonus that the Plaintiff was eligible for. (The Plaintiff did receive a yearly bonus on March 31 of 2015 in the amount of $2500, but was told it was only 50% of what he was eligible for).

4

22. After more than 90 days passed, on April 28th of 2015, Mr. Dungan came to Tulsa and the Plaintiff was given another review in which Mr. Dungan said he had improved "Light Years over the past several months" and that he was going to submit the Plaintiff for the retro-active raise and bonus to the HR manager, Don Vincent. During this meeting, Mr. Dungan stated that the expediters in Houston were "coming along", that he had concerns about the Expediter that had moved down there from Tulsa, and said that he was "worried about him and that he seems to react slower than everybody else". He also mentioned that the younger Expediter was "doing well, learning pretty fast, and doing a lot of traveling".

23. The Plaintiff was told later that Mr. Vincent told Mr. Dungan that he could not give the Plaintiff a retro-raise, that it was too late and that the decision made last November during Plaintiff's original first year review was permanent and nothing could be changed until the following year. Mr. Dungan told me he would try again in June to re-submit Plaintiff's raise request. When June came around, the Plaintiff asked Mr. Dungan about it and he said he might be able to get a "little" raise for the Plaintiff, but if the Plaintiff waited until the next November that he could give the Plaintiff a "much larger raise". The Plaintiff accepted that statement. The next November the Plaintiff never received an official review, but did receive a 3.5% raise. The Plaintiff understood it to mean he was meeting expectations with his job duties. Then in March of 2016, the Plaintiff received his yearly bonus.

24. On March 16, 2016, Mr. Vincent came up to the Tulsa office and notified the Plaintiff in person that he was being laid off along with some others in the Tulsa office in what he called a Reduction in Force. Mr. Vincent stated that "it had nothing to do with

5

performance". This affected 5 different departments in the Tulsa office. The Plaintiff did not know at the time who had been laid off along with him and found out a few days later. Among those who were also laid off are as follows:

25. The manager of the Document Control Department was about 42 years old and had been with the company for about 20 years. They kept the 3 employees that worked for her in Tulsa, and the new manager of the department would be from the Houston office and based there.

26. The Mechanical (engineering) department let go the 1 person that was doing that job in Tulsa. He had been there for about 10 years and was in his early 40s. His job would be taken over by someone in the Houston Office.

27. The Expediting department (which is under the Procurement Department head Jody Dungan) of which there were 2 expediters in Tulsa, the Plaintiff, a 56-year-old male and a 32-year-old male. The plaintiff was the one laid off.

28. At the time, the plaintiff was fairly certain that all those that had been laid off were the highest paid employees in their respective departments.

29. When the Plaintiff was laid off, he was given a Separation Agreement and Release form to sign, which he was told that if he did not sign it, he would not be eligible for his Severance pay, his Cobra payments for Health Insurance, and his Vacation pay, of which he had over 100 hours of vacation pay due to him.

30. On March 22, 2016, after finding out who had been laid off along with the Plaintiff, and believing that all that had been laid off had been the highest paid employees in each department, and not having any suspicion at the time of any discrimination at that point, and since the Plaintiff was living paycheck to paycheck and could not go without

the Severance pay, Health Insurance and Vacation pay owed to him, the Plaintiff signed the form and e-mailed it back to Mr. Vincent at Petro-chem.

31. About 3-4 weeks later, the Plaintiff learned that the younger expediter that was hired 9 months after the Plaintiff was hired, and who was not let go in the RIF, the Plaintiff found out that he was hired on at Petro-chem and paid more than $10.00 per hour than the Plaintiff was paid, which came to about $20,000 more a year.

32. The younger expediter was hired in for much more than the plaintiff was and the plaintiff was lied to by Jody Dugan as to what an expediter could be hired in at. This includes the fact that the younger Expediter only had a 2-year associate's degree with no experience as a Buyer or an Expediter. The Plaintiff has a 4-year degree and many years experience as a Buyer.

33. If the layoff was merely for financial reasons as the Plaintiff was told, the company would have saved an additional $20,000 a year if they had laid off the younger Expediter instead of the Plaintiff, who is 25 years older.

34. The plaintiff believes he suffered age discrimination while employed with Petro-Chem. He was paid considerably less than the substantially younger employee for the same job. Additionally, when the Plaintiff was laid off he was told it was a cost saving measure and had nothing to do with performance. If that was true, the company would have saved more by laying-off the younger expediter.

35. The Plaintiff's signing of the release was done under duress and before all the information was available to him, he had no choice but to sign it as he could not go without the severance pay and the over 100 hours of vacation pay that were being held hostage until he signed the release.

36. The Plaintiff believes the release he signed should be rendered invalid, null and void.

37. Substantially the Plaintiff believes he was treated disparately and laid off from employment because of his age.

## FIRST CLAIM FOR RELIEF
## DISCRIMINATION BASED ON AGE IN VIOLATION OF THE ADEA AND THE OKLAHOMA ANTI-DISCRIMINATION ACT (OADA)

38. Plaintiff incorporates the preceding paragraphs as if re-alleged.

39. The foregoing conduct violates the ADEA of 1967 as amended, 29 U.S.C. § 621 *et seq.* as well as 25 O.S. 1301, et seq.

40. Plaintiff experienced disparate treatment compared to co-workers under the age of forty (40) with regard to job assignments, training, discipline, benefits, and termination from employment in violation of the ADEA.

41. Defendant's discriminatory practices have resulted in the loss of past and future wages and other job benefits, and have caused Plaintiff to suffer humiliation, embarrassment, and emotional distress.

42. Defendant committed the act alleged with malice or reckless indifference to the protected rights of the Plaintiff. Plaintiff is thus entitled to recover punitive damages in an amount to be determined by a jury.

43. Upon information and belief, Plaintiff's termination was motivated in substantial part by his age, in violation of the ADEA.

WHEREFORE, Plaintiff prays for judgment against Defendant for:

 a. Back pay and lost benefits; front pay until normal retirement;
 b. Compensatory damages for his mental anguish, pain and suffering, and other non-pecuniary losses;

c. Punitive damages for the intentional and knowing acts of discrimination committed by Defendant's management and executives;
d. Plaintiff's attorney fees and the costs and expenses of this action;
e. Injunctive relief;
f. Such other relief as the Court deems just and equitable.

Respectfully submitted,

David Dormont
4108 S. Maple Ave,
Broken Arrow, Oklahoma, 74011
918-638-4868
ddorm8624@aol.com

9