IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

DAVID DORMONT,

          Plaintiff,

v.

HEURTEY PETROCHEM and PETRO-
CHEM DEVELOPMENT CO., INC.,

          Defendants.

Case No. 17-CV-00638-GKF-FHM

**OPINION AND ORDER**

Before the court is the Motion for Summary Judgment [Doc. 24] filed by defendants Heurtey PetroChem and Petro-Chem Development Co., Inc. (collectively, "PetroChem"). For the reasons set forth below, the motion is granted.

**I.    Background**

Plaintiff David Dormont worked as a project expeditor for PetroChem Development Co., Inc. in its Tulsa, Oklahoma office for a little over twenty-eight months. PetroChem terminated Dormont's employment on March 16, 2016 as part of a ten percent (10%) reduction-in-force of its U.S. workforce necessitated by a downturn in the oil and gas market. The company discharged five (5) employees from various divisions in its Tulsa office. Dormont was fifty-six years old at the time of his termination. Dormont alleges that PetroChem discriminated against him on the basis of his age, and initiated this litigation asserting claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* and the Oklahoma Anti-Discrimination Act, 25 OKLA. STAT. §§ 1301 *et seq.* PetroChem now seeks summary judgment as to Dormont's claims.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). The inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## III. Undisputed Material Facts

The following facts are undisputed for summary judgment purposes:

PetroChem is an international oil and gas engineering group. PetroChem has two offices in the United States: one in Tulsa, Oklahoma, and the second—its corporate headquarters—in Houston, Texas. [Doc. 25, p. 6, ¶ 1; Doc. 29, p. 2, ¶ 1].

Plaintiff David Dormont began his employment with PetroChem as a project expeditor on or about November 12, 2013, in Tulsa, Oklahoma. Senior Director of Procurement Jody Dungan hired and supervised Dormont. [Doc. 25, p. 6, ¶ 2; Doc. 29, p. 2, ¶ 2].

After hiring Dormont, PetroChem promoted one expeditor in the Tulsa office, transferred another to Houston, and hired an additional expeditor in August 2014. By August 2014, PetroChem had two expeditors in Tulsa and two in Houston. [Doc. 25, pp. 6–7, ¶ 3; Doc. 29, p. 2, ¶ 3].

In December 2014, PetroChem reviewed Dormont's performance. PetroChem determined that Dormont's performance had not met expectations and in several cases fell well below the expectations of a project expeditor. [Doc. 25, p. 7, ¶ 4; Doc. 29, p. 2, ¶ 4; Doc. No. 25-4]. Because of his poor performance, Dormont was not given a salary adjustment at the end of 2014, but supervisor Dungan gave Dormont ninety (90) days to show a significant and substantial improvement in his work. [Doc. 25, p. 7, ¶ 5; Doc. 29, pp. 2–3, ¶ 5; Doc. 25-2, pp. 80:16-82:20]. Dungan indicated he would request that Dormont receive a merit increase if Dormont's work improved by the end of the ninety (90) days. [Doc. 25, p. 7, ¶ 5; Doc. 29, pp. 2–3, ¶ 5; Doc. 25-2, pp. 80:16-82:20]. Dormont received a 3.5% salary increase in 2015. [Doc. 25, p. 7, ¶ 5; Doc. 29, pp. 2–3, ¶ 5; Doc. 25-2, pp. 82:16-83:4].

Leading up to March 16, 2016, PetroChem experienced reduced sales prospects and, as a result, needed to reduce operating expenses through a reduction-in-force ("RIF") of approximately ten percent (10%) of its United States workforce. [Doc. 25, p. 7, ¶ 6; Doc. 29, p. 3, ¶ 6]. To determine who would be selected for the RIF, PetroChem considered a variety of factors including functions to be performed, the number of personnel performing those functions, and which positions could be eliminated with the least amount of impact on PetroChem's ability to meet its

goals. [Doc. 25, p. 7, ¶ 7; Doc. 29, p. 3, ¶ 7]. PetroChem ultimately discharged five (5) employees from various divisions in the Tulsa office. [Doc. 25, p. 7, ¶ 7; Doc. 29, p. 3, ¶ 7].

Dungan selected Dormont for discharge. [Doc. 25, p. 6, ¶ 2; Doc. 29, p. 2, ¶ 2]. On March 16, 2016, PetroChem Vice President of Human Resources Don Vincent ("Vincent") met with and discharged Dormont. During their meeting, Vincent informed Dormont that PetroChem was experiencing economic challenges and was required to discharge a percentage of its North American workforce. [Doc. 25, p. 8, ¶ 9; Doc. 29, pp. 3-4, ¶ 9]. Dormont was the only Tulsa expeditor laid off, leaving Adam Fennell ("Fennell") as the sole expeditor in Tulsa. [Doc. 25, p. 8, ¶ 8; Doc. 29, p. 3, ¶ 8]. PetroChem evaluated Fennell's performance as meeting and/or exceeding expectations. [Doc. 25-1, ¶ 6; Doc. 25-6].[1] Fennell was formerly a logistics coordinator in the United States Coast Guard and had recent experience with a direct competitor which was relevant to his position with PetroChem. [Doc. 25, p. 8, ¶ 8; Doc. 29, p. 3, ¶ 8; Doc. 25-1, ¶ 6].

During the discharge meeting, Vincent informed Dormont that he had the option to sign a Separation Agreement and Release form ("Separation Agreement") in return for a severance payment. Vincent walked Dormont through the terms of the Separation Agreement, and he advised Dormont that he should meet with an attorney prior to executing the agreement. The Separation Agreement included a release of Dormont's employment claims under the ADEA, Older Workers Benefit Protection Act ("OWBPA"), and the OADA. Dormont testified that he

---

[1] In his summary judgment response, Dormont purports to dispute PetroChem's evaluation of Fennell's performance on the basis that "[t]here is no evidence to support how PetroChem evaluated Fennell's performance." [Doc. 29, p. 3, ¶ 8]. However, PetroChem submitted a December 8, 2014 e-mail from Dungan to Vincent regarding Fennell's performance review which stated as follows: "The 90-day review was conducted last week in Tulsa. Results of the review were very positive and Adam is meeting and/or exceeding expectations." [Doc. 25-6]. Dormont does not address the e-mail, nor make any evidentiary objections to its admissibility. Moreover, the court is satisfied that the e-mail is admissible as a record of a regularly conducted activity. FED. R. EVID. 803(6).

understood the terms of the Separation Agreement and the claims he would be releasing by signing and returning the Separation Agreement. [Doc. 25, pp. 8–9, ¶ 10; Doc. 29, p. 4, ¶ 10; Doc. 25-7; Doc. 25-2, pp. 104:14-105:6].

The Separation Agreement gave Dormont forty-five (45) days to consider the terms and meet with an attorney before returning the executed Separation Agreement. Dormont testified that he followed PetroChem's advice and consulted with friends who were attorneys before signing the Separation Agreement. Dormont then executed and returned the Separation Agreement within five days of meeting with Vincent. Additionally, on March 22, 2016, Dormont signed and returned a form letter indicating that he had not revoked the Separation Agreement. [Doc. 25, p. 9, ¶ 11; Doc. 29, p. 4, ¶ 11].

In consideration for signing and returning the Separation Agreement, Dormont received a severance payment in the gross amount of $2,636.86. Dormont was fifty-six (56) years old at the time of his termination. [Doc. 25, p. 9, ¶ 12; Doc. 29, p. 4, ¶ 12].

### IV. Analysis

PetroChem argues it is entitled to summary judgment because (1) the Separation Agreement constitutes a valid waiver of Dormont's claims, (2) Dormont cannot establish a prima facie case of age discrimination, and (3) Dormont cannot identify any evidence of pretext. The court will separately consider each argument.

*A. Separation Agreement*

PetroChem first argues that Dormont knowingly and voluntarily executed the Separation Agreement and therefore waived his right to assert age discrimination claims. In response, Dormont asserts that the Separation Agreement failed to satisfy the requirements of the Older Workers Benefit Protection Act's ("OWBPA") amendments to the ADEA regarding waiver of rights or claims.

5

The OWBPA amendments to ADEA impose certain requirements and duties on employers who seek release of certain statutory claims, including claims under the ADEA. *See* 29 U.S.C. § 626; *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998). Pursuant to the OWBPA,

> An individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary. Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum—
>
> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
> (B) the waiver specifically refers to rights or claims arising under this chapter;
> (C) the individual does not waive rights or claims that may arise after the date the waiver is executed;
> (D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;
> (E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
> (F) (i) the individual is given a period of at least 21 days within which to consider the agreement; or
> (ii) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of at least 45 days within which to consider the agreement;
> (G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;
> (H) if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to—
> (i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and
> (ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

29 U.S.C. § 626(f)(1). "An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements." *Oubre*, 522 U.S. at 426-27. Thus, "[t]he absence of even

one of the OWBPA's requirements invalidates a waiver." *Kruchowski v. Weyerhaeuser Co.*, 446 F.3d 1090, 1095 (10th Cir. 2006) (quoting *Butcher v. Gerber Prods. Co.*, 8 F. Supp. 2d 307, 314 (S.D.N.Y. 1998)); *see also Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007) (collecting Circuit Court of Appeals cases requiring strict compliance with OWBPA).

Dormont argues that the Separation Agreement offered by PetroChem failed to inform him, in writing, of the job titles and ages of all individuals eligible or selected for the RIF or the job titles and ages of persons not eligible or selected as required by section 626(f)(1)(H), and therefore the Separation Agreement is invalid as a matter of law with respect to his ADEA claim.

The court agrees. PetroChem presents no evidence that it provided Dormont the information required in section 626(f)(1)(H). *See* 29 U.S.C. § 626(f)(3) (party asserting the validity of a waiver bears the burden of proving that the waiver was knowing and voluntary). Rather, PetroChem argues that the totality of the circumstances indicate that Dormont knowingly and voluntarily executed the Separation Agreement.[2] However, pursuant to the OWBPA, the absence of one requirement invalidates a waiver, regardless of the surrounding circumstances. Because the Separation Agreement does not satisfy the requirements of section 626(f)(1)(H), the Separation Agreement is ineffective as a matter of law and cannot operate to waive Dormont's ADEA claim.

PetroChem also notes that Dormont has not returned the $2,636.86 severance payment he received as consideration for signing the Separation Agreement. To the extent that PetroChem

---

[2] In support of a totality of circumstances inquiry without consideration of the OWBPA's requirements, PetroChem cites the decision by another court in this district in *Loden v. Blue Cross & Blue Shield of Okla.*, No. 11-CV-0673-CVE-TLW, 2013 WL 5207238 (N.D. Okla. Sept. 13, 2013). However, in that case, defendant specifically did not request dismissal of plaintiff's ADEA claim and therefore the statutory requirements for waivers of an employee's right to sue under the ADEA were not at issue. *Id.* at *1 n. 2. Thus, *Loden* is not persuasive as to Dormont's ADEA claim.

argues that Dormont's retention of the severance payment estops Dormont from challenging the validity of the Separation Agreement or constitutes ratification, the Supreme Court's decision in *Oubre* is dispositive as to Dormont's ADEA claim. In *Oubre*, the Supreme Court declined to apply traditional rules of ratification and equitable estoppel to separation agreements that do not comply with the OWBPA, reasoning that

> The rule proposed by the employer would frustrate [the OWBPA's] practical operation as well as its formal command. In many instances a discharged employee likely will have spent the moneys received and will lack the means to tender their return. These realities might tempt employers to risk noncompliance with the OWBPA's waiver provisions, knowing it will be difficult to repay the moneys and relying on ratification. We ought not to open the door to an evasion of the statute by this device.

*Oubre*, 522 U.S. at 427. Thus, Dormont's failure to return the severance payment has no effect on the validity of the Separation Agreement as to his ADEA claim.[3] Accordingly, Dormont did not effectively waive his right to bring an ADEA age discrimination claim against PetroChem.[4]

B.  *Age Discrimination*

PetroChem argues that Dormont's age discrimination claims fail as a matter of law. Because Dormont offers no direct evidence of age discrimination, the court applies the *McDonnell*

---

[3] In *Oubre,* the Supreme Court noted that a release that does not comply with the OWBPA may be ineffective as to ADEA claims, but effective as to certain state law claims. *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221 (10th Cir. 1999) (citing *Oubre*, 422 U.S. at 429). However, PetroChem does not raise the issue of whether the Separation Agreement is effective as to Dormont's claim under the Oklahoma Anti-Discrimination Act, even if unenforceable as to his ADEA claim. Further, the parties in this case rely solely on federal law as to the validity of the Separation Agreement and provide no briefing as to state law on the issue. *See* [Doc. 25, pp. 12-14; Doc. 29, pp. 5-7]. Thus, the court does not consider the effectiveness of the Separation Agreement as a waiver of Dormont's OADA claim.

[4] In reply, PetroChem argues "[i]f the Court finds the Plaintiff's Separation Agreement is invalid, then Plaintiff must return the $2,636.86 to PetroChem." [Doc. 30, p. 5]. However, because PetroChem first raised the issue in reply, the request is not properly before this court. *See also* LCvR 7.2(e) (prohibiting inclusion of new motions in response briefs).

8

*Douglas* burden-shifting framework.[5] *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Pursuant to the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* The burden then shifts to the defendant "to produce a legitimate, nondiscriminatory reason for its actions." *Id.* "If the defendant does so, the plaintiff must either show that his race, age, gender, or other illegal consideration was a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.* (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002)). PetroChem argues that Dormont cannot establish a prima facie case of discrimination and, further, offers no evidence of pretext or discriminatory motive. The court separately considers each argument.

1. Prima Facie Case

"To demonstrate a prima facie case of age discrimination in the context of a RIF, [plaintiff] must show that he (1) is within a protected age group; (2) was doing satisfactory work; (3) was discharged despite the adequacy of his work; and (4) has some evidence the employer intended to discriminate against him in reaching its RIF decision." *Rangel v. Sanofi Aventis U.S., LLC*, 507 F. App'x 786, 790 (10th Cir. 2013) (citing *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008)). PetroChem does not dispute that Dormont was within a protected age group at the time of his termination. [Doc. 25, p. 16]. However, PetroChem argues that Dormont cannot establish the remaining factors.[6]

---

[5] Dormont does not object to application of the *McDonnell Douglas* framework and applies it himself in his response. *See* [Doc. 29, pp. 7-9].

[6] PetroChem urges the court to apply the factors as articulated by the Tenth Circuit in *Adamson*, which requires evidence that plaintiff was replaced by someone outside the protected class. *See* [Doc. 25, p. 16]. However, *Adamson* did not involve a reduction-in-force. *Adamson,* 514 F.3d at

First, PetroChem asserts that Dormont cannot show that he was performing satisfactory work at the time of his termination. To satisfy this second element, Dormont must only provide "*some* evidence of good performance." *Paup v. Gear Prods., Inc.*, 327 F. App'x 100, 109 (10th Cir. 2009) (emphasis added) (quoting *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1420 (10th Cir. 1991)). However, "proof of competence sufficient to make out a prima facie case of discrimination was never intended to encompass proof of superiority or flawless performance." *Denison*, 941 F.2d at 1421 (quoting *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1978)). Rather, to establish a prima facie case, plaintiff may present evidence "that [he] continued to possess the objective qualifications [he] held when [he] was hired, or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] held [his] position for a significant period of time." *Ellison v. Sandia Nat'l Labs.,* 60 F. App'x 203, 205 (10th Cir. 2003) (quoting *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991), *abrogated on other grounds, Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)). The burden is not onerous. *MacDonald*, 941 F.2d at 1119.

To show that Dormont cannot establish the second element, PetroChem points to evidence that Dormont did not have experience as an expeditor in the oil and gas field, had performance issues during his employment, and did not receive a raise in 2014 as a result of his performance issues. [Doc. 25, pp. 16-17]. However, although evidence of employer dissatisfaction may be presented to rebut plaintiff's prima facie showing, considering evidence of employer dissatisfaction with respect to a prima facie showing improperly collapses the *McDonnell Douglas* framework. *Denison*, 941 F.2d at 1421. Thus, "[a] defendant's evidence regarding an employee's

---

1142-45. The court declines to apply the factors as enumerated in *Adamson* in this instance and, instead, relies on Tenth Circuit cases articulating the requirements in the context of a reduction in force.

work performance should not be considered when determining whether the employee has made a prima facie case of employment discrimination." *Ellison*, 60 F. App'x at 205. Accordingly, at the first stage of the analysis, the court will consider only whether plaintiff satisfied its initial burden of production.

Here, some evidence exists as to the sufficiency of Dormont's work. Dormont testified that he was performing "just as fine" as the other expeditor in Tulsa at the time of the reduction in force. [Doc. 25-2, pp. 99:17-23]. It is undisputed that Dormont received a raise in 2015, [Doc. 25, p. 7, ¶ 5; Doc. 29, pp. 2–3, ¶ 5; Doc. 25-2, pp. 82:16-83:4], which Dormont testified he took to mean "that everything was fine." [Doc. 25-2, p. 125:1-9]. Further, Dormont presents evidence that his performance had improved since November of 2014. [Doc. 29-1]. Thus, Dormont produces *some* evidence that he was performing satisfactory work at the time of his termination and therefore satisfies the second and third element to establish a prima facie case.

With regard to the fourth element—evidence that the defendant intended to discriminate— the Tenth Circuit has held that the factor may be satisfied by "circumstantial evidence that, during the RIF, the employer discharged the plaintiff but retained or placed a younger employee in a similar position." *Rangel*, 507 F. App'x at 790; *see also Paup*, 327 F. App'x at 109 ("Our precedent is clear that 'a plaintiff who is fired pursuant to a[n] RIF and who held a similar position to a younger retained employee can satisfy the fourth element.'"). The parties do not dispute that PetroChem discharged Dormont, who was over forty, but retained Adam Fennell, a younger employee, as an expeditor in the Tulsa office.[7] [Doc. 25, p. 8, ¶ 8; Doc. 29, p. 3, ¶ 8]. Thus,

---

[7] Although Dormont produces no evidence regarding Fennell's age, PetroChem does not dispute that Fennell was younger than Dormont.

Dormont satisfies the fourth element and therefore demonstrates a prima facie case of age discrimination in Dormont's termination.[8]

2. Legitimate, Non-Discriminatory Reason for Termination

Because Dormont established a prima facie case, the burden shifts to PetroChem to produce a legitimate, nondiscriminatory reason for its decision to terminate Dormont. "To succeed does not require much. [PetroChem] 'need not persuade the court that it was actually motivated by the proffered reasons,' but must merely 'set forth, through the introduction of admissible evidence, the reasons for plaintiff's [termination].'" *Paup*, 327 F. App'x at 110 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981)).

PetroChem presents undisputed evidence in the form of affidavits that, prior to March 16, 2016, PetroChem experienced reduced sales prospects, needed to reduce operating expenses, and therefore decided to implement a reduction-in-force to lay off approximately ten percent (10%) of its United States workforce. [Doc. 25, p. 7, ¶ 6; Doc. 29, p. 3, ¶ 6; Doc. 25-1, ¶ 4]. PetroChem terminated Dormont as a result of the RIF. [Doc. 25, p. 8, ¶ 9; Doc. 29, pp. 3-4, ¶ 9; Doc. 25-1, ¶ 7]. Both Vincent and Dungan aver that, to determine who would be selected for the RIF, PetroChem considered a variety of factors including functions to be performed, the number of

---

[8] Dormont's Petition includes allegations that Dormont "experienced disparate treatment compared to co-workers under the age of forty (40) with regard to job assignments, training, discipline, benefits, and termination from employment[.]" [Doc. 2-1, ¶ 40]. It is unclear the extent to which Dormont wishes to pursue allegations of disparate treatment with regard to job assignments, training, discipline, and benefits as Dormont testified that he "wasn't concerned with the first part of the thing. It was the last part"—*i.e.*, termination. [Doc. 25-2, p. 128:12-18]. Further, Dormont's response includes argument only as to his termination, and Dormont offers no evidence to substantiate disparate treatment claims on the basis of job assignments, training, discipline, or benefits. "Unsupported conclusory allegations . . . do not create an issue of fact." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005), *abrogated on other grounds, Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018). Thus, Dormont fails to demonstrate a prima facie case of disparate treatment on the basis of assignments, training, discipline, or benefits and PetroChem is entitled to summary judgment on these claims.

personnel performing those functions, and which positions could be eliminated with the least amount of impact on PetroChem's ability to meet its goals. [Doc. 25, p. 7, ¶ 7; Doc. 29, p. 3, ¶ 7; Doc. 25-1, ¶ 5; Doc. 25-5, ¶ 8]. The Vincent and Dungan affidavits indicate that PetroChem terminated Dormont because of his overall performance, leaving Adam Fennell as the sole expeditor in Tulsa. [Doc. 25, p. 8, ¶ 8; Doc. 29, p. 3, ¶ 8; Doc. 25-1, ¶ 6; Doc. 25-5, ¶ 9]. Dormont's previous performance issues are substantiated by Dormont's annual performance review of December 4, 2014 [Doc. 25-4], and, in relation to Adam Fennell, by an e-mail dated December 8, 2014 from Dungan to Vincent [Doc. 25-6].[9] Based on the evidence presented, PetroChem has satisfied its burden to proffer evidence of a legitimate, non-discriminatory reason for Dormont's termination—a reduction in force.[10]

### 3. Discriminatory Intent or Pretext

Finally, PetroChem argues Dormont cannot identify any evidence of pretext or discriminatory motive. In response, Dormont offers no direct evidence of discriminatory intent, and instead relies on pretext. [Doc. 29, pp. 9-10]. "Pretext exists when an employer does not honestly represent its reasons for terminating an employee." *Goldstein v. Sprint United Mgmt. Co.*, 288 F. App'x 476, 480 (10th Cir. 2008) (quoting *Miller v. Eby Realty Grp. LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005)). To establish pretext, Dormont "must present facts suggesting that [PetroChem's] proffered age-neutral reason for his dismissal is 'so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reason[] [is] unworthy of belief.'"

---

[9] PetroChem also provides evidence in the form of an employee self-evaluation and e-mails ranging from July 25, 2014 to November 6, 2014, which PetroChem failed to cite in its Statement of Undisputed Material Facts. [Doc. 25-9 to Doc. 25-14]. The court does not consider this evidence in ruling on the motion.

[10] Dormont does not dispute that PetroChem established a legitimate, non-discriminatory reason for his termination. [Doc. 29, p. 9].

13

*Hinds v. Sprint/United Mgmt. Co.*, 523 F. 3d 1187, 1197 (10th Cir. 2008) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243 (10th Cir. 2006)). "In the typical RIF case, a plaintiff demonstrates pretext by presenting evidence that his or her termination did not accord with the company's RIF criteria, that the RIF criteria were deliberately falsified or manipulated to secure the plaintiff's dismissal, or that the RIF generally was pretextual." *Id.*

Dormont does not dispute that PetroChem terminated him as part of the reduction in force, and he presents no evidence that his termination did not accord with the company's RIF criteria; that the RIF criteria was deliberately falsified or manipulated; or that the RIF generally was pretextual.

Rather, Dormont argues that PetroChem included him in the RIF due to his age, rather than his performance. In support thereof, Dormont asserts that, of the five individuals laid off in Tulsa, *he believes* at least three were over the age of forty. [Doc. 29, p. 10]. However, Dormont presents *no evidence* of the ages of those workers terminated and retained in the Tulsa office. To oppose summary judgment, Dormont "must marshal admissible evidence of material fact." *Tran v. Sonic Indus. Servs.,* Inc., 490 F. App'x 115, 118 (10th Cir. 2012); *see also L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact."). Further, even if the court could reasonably infer that three of the five terminated workers in the Tulsa office were over forty (40), "[s]tatistics taken in isolation are generally not probative of age discrimination" and "[s]tatistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1110 (10th Cir. 2008) (quoting *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 979 (10th Cir. 1996)). Dormont does not dispute that PetroChem considered a variety of nondiscriminatory factors to determine who would be selected for the RIF

including functions to be performed, the number of personnel performing those functions, and which positions could be eliminated with the least amount of impact on PetroChem's ability to meet its goals. [Doc. 25, p. 7, ¶ 7; Doc. 29, p. 3, ¶ 7]. However, Dormont's statistical assertions do not account for any non-discriminatory factors. Nor does Dormont account for the terminated employee's prior experience, performance, or skills. Thus, Dormont's statistical assertions do not permit an inference of pretext. *See Pippin v. Burlington Res. Oil & Gas Co.,* 440 F.3d 1186, 1198 (10th Cir. 2006).

Additionally, Dormont argues PetroChem's decision to select him for the RIF, rather than Fennell who Dormont asserts was paid more, gives rise to an inference of age discrimination because PetroChem's decision undercuts its characterization of the RIF as a cost-saving measure. [Doc. 29, p. 10]. Again, Dormont offers no admissible evidence of Fennell's pay, but instead offers only his testimony as to his belief that Fennell earned more than him. *See* [Doc. 29-2, p. 51:17-25]. Further, Dormont's argument asks the court to second guess PetroChem's business judgment, something this court cannot do. *See Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 948 (10th Cir. 2011) ("[O]ur role is not to act as a super personnel department that second guesses employers' business judgments.") (alterations and quotations omitted from original). "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Id.* (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169-70 (10th Cir. 2007)). Thus, Dormont's testimony regarding Fennell's pay does not create a question of fact as to pretext.

Finally, Dormont offers his own testimony that, during the meeting in which Vincent terminated him, Vincent stated that Dormont's termination had nothing to do with his performance.

15

[Doc. 29-2, pp. 126:25 to 127:5]. Dormont argues PetroChem's assertion in this litigation that he was selected for the RIF due to performance constitutes an inconsistency and creates a genuine dispute of material fact. [Doc. 29, p. 10]. The mere fact that a defendant offers multiple or inconsistent explanations for a termination decision does not automatically create a genuine issue of material fact as to pretext. *See Jaramillo v. Colo. Judicial Dep't,* 427 F.3d 1303, 1311 (10th Cir. 2005). Here, but for a single statement allegedly made by Vincent during Dormont's exit interview, PetroChem has offered the same explanation for its RIF decision. *Id.* Further, Vincent's statement does not permit a reasonable inference of any discriminatory intent or motive. As previously stated, it is undisputed that PetroChem considered non-discriminatory factors to determine the employees selected for the RIF. [Doc. 25, p. 7, ¶ 7; Doc. 29, p. 3, ¶ 7]. Further, PetroChem offers evidence that Fennell was formerly a logistics coordinator in the United States Coast Guard and had recent experience with a direct competitor which was more relevant to his position to PetroChem. *See* [Doc. No. 25-1. ¶ 6]. Dormont offers no evidence that Fennell's experience, rather than age, was not the determinative factor in the RIF decision, particularly in light of PetroChem's undisputed consideration of functions to be performed.[11]

> When a defendant provides inconsistent explanations for an employment decision,
>
> [w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Goldstein*, 288 F. App'x at 481 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000)). PetroChem provided evidence that it previously evaluated Dormont as not meeting expectations and performing lower than Fennell. *See* [Doc. 25-1, ¶ 6; Doc. 25-4; Doc.

---

[11] Dormont admits that he has no knowledge of Fennell's work history beyond Fennell's LinkedIn profile. [Doc. No. 25-2, pp. 53:10-54:25 and 89:20-90:15].

25-5, ¶¶ 4, 6, and 9; Doc. 25-6]. Dormont relies primarily on his own testimony to disprove PetroChem's explanation for including him in the RIF. Under the circumstances, Dormont's self-serving testimony lacks probative value. Finally, the court notes that PetroChem hired Dormont when he was in his fifties and that Dungan, who made the decision to terminate Dormont, was forty-seven and also a member of a protected class at the time of plaintiff's termination.[12] [Doc. 25-2, pp. 13:10-12 and 81:2-5; Doc. 25-5, ¶ 10]. These facts belie the presence of discriminatory animus based on age. *See Points v. Honeywell Int'l, Inc.*, No. 13-1210-WJ-SMV, 2015 WL 13667298, at *9 (D.N.M. Jan. 5, 2015). On the basis of the evidence presented, no reasonable factfinder could find pretext or age discrimination. Accordingly, PetroChem is entitled to summary judgment.[13]

V.  **Conclusion**

WHEREFORE, defendants' Motion for Summary Judgment [Doc. 24] is granted.

IT IS SO ORDERED this 19th day of November, 2018.

*Gregory K. Frizzell*
GREGORY K. FRIZZELL, CHIEF JUDGE

---

[12] PetroChem urges the court to apply the "same actor" inference. [Doc. 25, p. 21 n. 13]. Because the court concludes that Dormont failed to satisfy his burden as to pretext, the court does not consider whether the "same actor" inference applies under these circumstances.

[13] Dormont also asserts an age discrimination claim under the Oklahoma Anti-Discrimination Act ("OADA"), 25 OKLA. STAT. § 1302. However, "[t]he legal analysis applicable to Plaintiff's claim under the OADA is the same as that for an ADEA claim." *Wood v. Midwest Performance Pack, Inc.*, No. CIV-16-785-D, 2018 WL 1440980, at *3 (W.D. Okla. Mar. 22, 2018). Thus, for the reasons discussed above, Dormont's OADA claim fails as a matter of law.